# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA A. BAUER and** | : | |
| **RICHARD E. BAUER,** | | |
| **her husband,** | : | **CIVIL ACTION NO. 3:15-1523** |
| | | |
| **Plaintiffs,** | : | **(JUDGE MANNION)** |
| | | |
| **v.** | : | |
| | | |
| **ROSS TOWNSHIP, *et al.*** | : | |
| | | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

Pending before the court is a motion for leave of court to file an amended complaint, (Doc. 51), filed by the plaintiffs Patricia A. Bauer ("Bauer"), and her husband, Richard E. Bauer. Also before the court are the respective motions to dismiss the original complaint filed by the defendants, who include: Ross Township (Doc. 20); Ross Township Supervisors, Howard Beers ("Supervisor Beers"), Russell Kresge, Jr. ("Supervisor Kresge"), and Tina Drake ("Supervisor Drake") (collectively, the "Ross Township Supervisors") (Doc. 20); Ross Township Solicitor John Dunn ("Solicitor Dunn") (Doc. 26); and Sheriff of Monroe County, Todd Martin ("Sheriff Martin") (Doc. 17). The plaintiffs filed suit against each of the individual defendants in both their individual and their official capacity. For the reasons stated below, the court will **DENY** the plaintiffs' motion for leave of court to file an amended

complaint, and the court will **GRANT** the defendants' motions to dismiss with prejudice.

## I.    FACTUAL BACKGROUND

There is no doubt that tragedy befell Ross Township on August 5, 2013. On that day, Rockne Newell ("Newell") opened fire during the monthly meeting of the Ross Township Supervisors, resulting in the death and serious injury of several attendees. Gerard Kozic, David Fleetwood, and James LaGuardia were shot and killed. Plaintiff Patricia Bauer was also severely injured after being knocked to the floor and trampled upon. (Doc. 51-1, ¶40). Newell's property had been condemned and sold by the township ten days prior to the shooting due to zoning and sewage violations. The plaintiffs allege that, over a period of approximately 23 years, Ross Township engaged in a substantial and multifaceted campaign against Newell, culminating in a mass shooting. The plaintiffs also claim that the defendants failed to provide security at the meeting despite their alleged knowledge of Newell's propensity for violence.

Exactly two years after the shooting, on August 5, 2015, the plaintiffs filed the original action pursuant to 42 U.S.C. §1983, claiming that Bauer was deprived of her due process rights under the Fourteenth Amendment of the Constitution. (Doc. 1). The plaintiffs' first cause of action is for personal injury suffered by Bauer. Specifically, the plaintiff avers that she suffered

2

"numerous, severe, permanent, irreparable and disabling injuries," including but not limited to:

> injuries to her back requiring injections, her left knee requiring surgery and her neck, for which surgery will be needed, surgery on her left ankle and injury to her left shoulder in the nature of a rotator cuff injury, emotional upset, severe shock to her nervous system and numerous other injuries.

(Doc. 51-1, ¶66). The second cause of action is for loss of consortium suffered by Bauer's husband. The plaintiffs now seek to amend the complaint, which alleges the same causes of action but contains additional factual allegations contained in paragraphs 28, 29, 30, 31, and 34. The following is taken from the pleadings and accompanying exhibits, as well as matters of the public record.

In 1990, Newell purchased 1.3 acres in real property located at 293 Flyte Road in Ross Township. Ross Township is a township in Monroe County governed by a three-member Board of Supervisors. Defendant Supervisor Kresge owns real property located at 206 Flyte Road, which directly abuts the rear and lies directly across the street from Newell's property. All three Supervisors at the time of the shooting are named as defendants in the case; however, when Newell purchased the subject property in 1990, Kresge was not yet a Supervisor.

The plaintiffs allege that the defendants used their positions for personal gain and benefit. (Doc. 51-1, ¶17). Specifically, the plaintiffs describe

Kresge's desire to purchase Newell's property, as demonstrated by antagonistic statements Kresge made to Newell and Kresge's multiple attempts to purchase the land for $500.00. For example, Kresge was quoted in a 2002 Pocono Record article as stating, "I don't want him around. No one else can have a place like that and neither can he." (Doc. 51-1, ¶21). As a result of Kresge's personal motives, the defendants pursued legal action against Newell, practicing selective enforcement of zoning regulations.

On February 6, 2012, at the Supervisors' monthly township meeting, the Ross Township Supervisors authorized legal action against Newell for violation of zoning regulations and sewer codes. On February 21, 2012, Ross Township filed a complaint in the Court of Common Pleas of Monroe County. On August 6, 2012 the Court of Common Pleas issued an opinion finding that Newell constructed a dwelling and resided on the premises, without first obtaining a zoning permit or a certificate of occupancy. Other violations included "storing junk, debris, municipal recyclables and municipal waste on his property," and storing open buckets of fecal matter inside and outside of his dwelling. (Doc. 26-1, ¶3; see also Doc. 1-6 at 2). The Court of Common Pleas ordered Newell to remove the junk and debris on his property and to vacate the property until he could obtain the necessary permits. (Doc. 26-1). On January 22, 2013, Ross Township filed a petition for enforcement of the August 6, 2012 order. (Doc. 26-2).

4

On July 25, 2013, Newell's property was condemned and sold at a Sheriff's Sale. The township purchased the land, with an estimated market value of about $125,000.00, for $1,806.10 in order to satisfy a judgment of $8,434.15 against Newell. Ten days later, Newell attacked attendees at the August 5, 2013 Ross Township meeting, resulting in the deaths of James LaGuardia, Gerard Kozic, and David Fleetwood, as well as physical injuries to Patricia Bauer.

The original complaint and the proposed amended complaint allege that the legal action pursued by the defendants (except for Sheriff Martin) was a "direct cause-in-fact and substantial factor" in bringing about physical harm to Bauer. (Doc. 51-1, ¶53). The plaintiffs also allege that the defendants knew or should have known of Newell's mental instability and predisposition for violence based on several incidents prior to the shooting. The factual allegations describe these incidents, many of which are sourced from news articles.

According to a July 4, 2002 Pocono Record article, the zoning officer at that time, John Kochis, was quoted as saying that he believed that Newell's property was boobie trapped. (Doc. 51-1, ¶21). Code Enforcement Officer Kochis went to Newell's property to investigate whether Newell resided there. Before approaching Newell to question him, Kochis removed Newell's mail from his mailbox. Newell became agitated and told Kochis to leave his

5

property. In response, Kochis revealed to Newell that he was carrying a hand gun. Newell proceeded to remove an automatic weapon from his vehicle and spray bullets into the trees. Newell then advised Kochis that if Kochis ever returned to his property, Newell would assume that he was under attack and shoot Kochis. Allegedly, the prior Code Enforcement Officer quit on his first day of work after being tasked with delivering an enforcement notice to Newell and refusing, indicating that no one should "mess" with the Newells. (Doc. 51-1, ¶31).

With respect to Solicitor Dunn, well in advance of the date of the shooting, Newell approached Attorney Michael Kaspszyk ("Attorney Kaspszyk") "about representation in his battle with Ross Township over his land." (Doc. 51-1, ¶27). Attorney Kaspszyk discussed Newell's allegedly disturbing behavior and alarming comments to Solicitor Dunn, who dismissed the behavior as characteristic of Newell.

After a hearing before the Honorable Peter J. O'Brien in the Court of Common Pleas of Monroe County, Solicitor Dunn approached Newell outside the courthouse to compliment him on obtaining favorable results at the hearing. Newell then took a bullet from his coat pocket and showed it to Solicitor Dunn, stating that "if he had taken his property, Mr. Newell would have shot Mr. Dunn that night." (Doc. 51-1, ¶28).

Additionally, Newell purportedly threatened Supervisor Kresge with

6

physical violence on multiple occasions. On one of these occasions, at a local diner, Newell stated to Kresge, "You know me and you know my family. You keep this up, and we're going to meet somewhere, me and you. When we're done, it will only be me." (Doc. 51-1, ¶29).

With respect to Sheriff Martin, the pleadings state that Newell's father, Peter Newell, "warned sheriff deputies trying to serve sheriff sale notice documents that his son was threatening violence," specifically stating to them, "I'm telling you one thing, people are going to die over this." These quotes were taken from an Associated Press article written after the shooting on August 7, 2013. (Doc. 51-1, ¶32). Prior to the shooting, Newell also allegedly told Sheriff Martin that if Martin were to come to take his property, "Shoot me because I don't want to shoot you." (Doc. 51-1, ¶34).

The plaintiffs aver that, despite this long history and knowledge of Newell's threats to kill over his land, the defendants failed to warn attendees of the August 5, 2013 township meeting and to provide security. These actions violated Bauer's "right to be free from harm" and "free from interference with the fundamental right to life, liberty and the pursuit of happiness." (Doc. 51-1, ¶¶49-50).

## II.    PROCEDURAL HISTORY

The plaintiffs filed the original complaint on August 5, 2015 for violation

of the plaintiffs' constitutional due process rights pursuant to §1983, with the first cause of action for personal injury and the second cause of action for loss of consortium. The defendants filed motions to dismiss, respectively, which the plaintiffs opposed. Sheriff Martin filed a motion to dismiss and a supporting brief on September 17, 2015. (Doc. 17, Doc. 18). The plaintiffs filed an opposing brief on October 23, 2015, with leave of court to file after the response deadline passed. (Doc. 22, Doc. 32). Sheriff Martin filed a reply brief on October 28, 2015. (Doc. 33).

Ross Township and the Ross Township Supervisors filed a motion to dismiss and a supporting brief on September 24, 2015. (Doc. 20, Doc. 21-3). The plaintiffs filed an opposing brief on November 9, 2015, with leave of court to file after the response deadline passed. (Doc. 35). Ross Township and the Ross Township Supervisors filed a reply brief on December 4, 2015, after the court reset the reply deadline for that date. (Doc. 46, Doc. 48).

Solicitor Dunn filed a motion to dismiss and a supporting brief on October 16, 2015. (Doc. 26, Doc. 27). The plaintiffs filed an opposing brief on November 30, 2015, with leave of court to file after the response deadline passed. (Doc. 43, Doc. 47). Solicitor Dunn filed a reply brief on December 14, 2015, after the court reset the reply deadline for that date. (Doc. 49).

In the midst of briefing on the motions to dismiss, on October 20, 2015, the court issued a scheduling order providing a deadline of February 1, 2016

for the filing of amended pleadings. (Doc. 29). On May 9, 2016, the Court extended the case management deadlines without altering the deadline for the amendment of pleadings. (Doc. 50). On May 16, 2016, the plaintiffs filed a motion for leave to file an amended complaint along with the proposed amended complaint, (Doc. 51, Doc. 51-1), and a supporting brief on May 23, 2016, (Doc. 53).[1] Defendants Dunn and Martin filed an opposing brief on May 17, 2016, (Doc. 52), and Ross Township and the Ross Township Supervisors filed an opposing brief on May 31, 2016, (Doc. 55). Having received and reviewed briefs on both motions from all parties, the motions are now ripe for decision.

## III.   LEGAL STANDARDS

The plaintiffs brought a motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), since the time for amending the complaint as a matter of course had expired. See Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) states: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Third Circuit has adopted a liberal approach

---

[1]The plaintiffs failed to provide a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold-faced type, or a "redlined" version of the proposed amended complaint, as per Local Rule 15.1(b), but the court deems this as a non-fatal error.

to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486–87 (3d Cir. 1990). Amendment, however, is not automatic. See Dover Steel Co., Inc. v. Hartford Accident and Indent., 151 F.R.D. 570, 574 (E.D. Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990).

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if a plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has

10

been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 544. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiffs' cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, a plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 545) (brackets and quotation marks omitted).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d

1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   DISCUSSION

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006). Thus, to state a claim under §1983, the plaintiffs must show that the defendant, acting under color of state law, deprived Bauer of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423. Here, the plaintiffs complain of a violation of Bauer's substantive due process rights under the Fourteenth Amendment.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const.

amend. XIV, §1. In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989), the Supreme Court held that the Fourteenth Amendment imposes no affirmative obligation upon a state to protect its citizens from private actors. Similar to this case, the DeShaney case involves the most mournful of events. Joshua DeShaney suffered physical abuse from his father. The respondents, social workers and local officials, had ample reason to believe Joshua's father was physically abusing him and, at one point, secured temporary custody of Joshua. They returned Joshua to his father, however, and the violence continued. Ultimately, Joshua's father caused severe brain damage to him. Joshua and his mother sued respondents under §1983 claiming that their failure to act deprived Joshua of his liberty interest in "free[dom] from . . . unjustified intrusions on personal security," in violation of the Due Process Clause of the Fourteenth Amendment. Id. at 195. The Supreme Court held that it did not, stating that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. The Supreme Court affirmed a summary judgment for the respondents. Two exceptions to the DeShaney holding exist: the "special relationship" exception and the "state-created danger" exception. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).

In the instant case, the plaintiffs seek to amend the complaint by adding

new factual allegations about Newell's threats to specific individuals. (See Doc. 51-1, ¶¶28-31, 34). Namely, the plaintiffs seek to add alleged facts about Newell's threat to Solicitor Dunn in which Newell displayed a bullet to him; Newell's threats of physical violence to Supervisor Kresge; the confrontation in which Newell discharged a weapon into the trees during zoning officer Kochis' investigation on Newell's property; and the quitting of the zoning officer prior to Kochis. All defendants oppose the proposed amendments on grounds of futility. The defendants argue that the court should reject the revisions because they cannot rehabilitate the plaintiffs' complaint and save it from dismissal due to the Supreme Court precedent of DeShaney. The defendants also raise various other objections to the complaint in their petitions for dismissal, only some of which merit discussion below. In response, the plaintiffs contend that the "state-created danger" exception applies.

A state is responsible for the protection of its citizens where its actions create or enhance the danger to a citizen from the state or a third party. Kaucher, 455 F.3d at 431 (citing Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir.1996). To state a claim under this theory of state-created danger, a plaintiff must establish four elements: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the

14

state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Kneipp, 95 F.3d at 1208.

### A.    Creating the Opportunity for Harm

The court begins its analysis by examining the fourth element for a claim under the state-created danger theory, which is dispositive of one category of alleged infringement by the defendants. A plaintiff must sufficiently plead that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Bright, 443 F.3d at 281. The defendant's action must be the "but-for" cause of the plaintiff's injury. Kaucher, 455 F.3d at 432 (citing Estate of Smith, v. Marasca, 318 F.3d 497, 510 (3d Cir. 2003)). Moreover, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" Kaucher, 455 F.3d at 432 (quoting Bright, 443 F.3d at 281).

In the pleadings, the plaintiffs identify two general categories of unconstitutional conduct. First, the plaintiffs cite a litany of alleged malfeasance by Ross Township, the Ross Township Supervisors, and Solicitor Dunn, revolving around the pursuit of legal action against Newell for

15

violations of local zoning and sewer regulations, "infractions that were ignored

against other owners." (Doc. 51-1, ¶16(b),(e)). The plaintiffs also cite a litany

of nonfeasance by all the defendants, including Sheriff Martin, based on their

failure to warn attendees of the township meeting of the risk of violence by

Newell, and to provide security at the meeting on August 5, 2013. (Doc. 51-1,

¶¶54(g)-(h), 61(d),(f)).

Regarding the latter kind of prohibited conduct - the defendants'

omissions - it does not give rise to constitutional claims under DeShaney. As

the Third Circuit emphasized in Bright, "under the fourth element of a

state-created danger claim, '[l]iability under the state-created danger theory

is predicated upon the states' affirmative acts which work to the plaintiffs'

detriments in terms of exposure to danger.'" Id., 443 F.3d at 282 (quoting D.R.

by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir.

1992) (en banc)). "It is misuse of state authority, rather than a failure to use

it, that can violate the Due Process Clause." Bright, 443 F.3d at 282.

The plaintiffs claim that the defendants are culpable for not providing

security at the township meeting and for not warning attendees of the risk of

harm. These allegations are devoid of affirmative acts. Further, under

DeShaney, the defendants' failure to protect Bauer from Newell's attack is not

a due process violation. The Due Process Clause was intended to "protect the

people from the State, not to ensure that the State protected them from each

other." DeShaney, 489 U.S. at 196. The Framers of the Constitution relegated the extent of the State's duty to protect citizens from private violence to legislative processes. Id. The court holds that the plaintiffs have failed to state a cause of action under the Fourteenth Amendment for the defendants' alleged omissions, including the failure to warn the meeting attendees of the risk of danger and the failure to provide security at the meeting.

Sheriff Martin's purported due process violations in the complaint consist only of omissions. The plaintiffs distinguish between Sheriff Martin's omissions and his affirmative role in executing the judgment to underscore this point. In their opposition to Sheriff Martin's motion to dismiss, the plaintiffs argue that "[t]he failure to act in the face of valid threats is the basis for Plaintiff's claims against him." (Doc. 32 at 26). Therefore, under the precedent of DeShaney, the constitutional claims against Sheriff Martin for infringement of Bauer's due process rights must fail for lack of affirmative conduct.

Regarding the former kind of prohibited conduct alleged by the plaintiffs - the legal action against Newell - it does encapsulate affirmative acts. The issue is whether these acts created a danger to Bauer. Here, the Ross Township Supervisors and Ross Township (through the actions of the Defendant Supervisors) pursued legal action against Newell for violating zoning and sewage regulations. Solicitor Dunn represented the township in the action. After the township secured a favorable outcome, the Monroe

County Sheriff's Office, under the supervision of Sheriff Todd Martin, served the notice of Sheriff's sale on Newell and executed the sale. As mentioned, although the plaintiffs do not explicitly recognize Sheriff Martin's role here as affirmative conduct attributable to him, viewing the facts in a light most favorable to the plaintiffs, the court recognizes this affirmative conduct in the factual allegations. When Newell opened fire, Bauer was knocked to the ground and suffered serious injury. The defendants' actions, individually or collectively, did not create this danger that led to her afflictions. To conclude otherwise would require an insurmountable leap in logic. The plaintiffs have failed to adequately plead the fourth element of the state-created danger theory of liability.

### B.    Foreseeable and Fairly Direct Harm

With respect to the first element, the plaintiffs must sufficiently allege that "the harm ultimately caused was foreseeable and fairly direct." Although the plaintiffs plead that the defendants were aware of a credible threat of violence by Newell, and that the defendants' actions caused Bauer's injuries, these allegations are not necessarily sufficient to state a viable claim. The court need not accept "bald assertions" or "legal conclusions" contained in the complaint. Morse, 132 F.3d at 906 (quotations omitted).

Even with consideration of the proposed factual additions to the original

complaint, the foreseeability of the shooting is unclear. The plaintiffs cite several incidents purportedly demonstrating Newell's violent propensities, the first dated incident being in 2002, almost ten years after Newell purchased the property. In 2002, Kochis made a statement to the Pocono Record that he believed the land to be boobie trapped. Then, over ten years after that, and after the township initiated legal proceedings against Newell, Newell threatened violence against Solicitor Dunn and Sheriff Martin on separate occasions. Newell purportedly brandished a bullet before Solicitor Dunn. When Kochis went to Newell's property to conduct an investigation, Newell fired shots from his automatic weapon into the trees. The plaintiffs also cite other incidents - many with unspecified dates - such as Newell's verbal threats to Supervisor Kresge.

Many of Newell's threatening incidents described in the original complaint, as well as the proposed amended complaint, are vague and lack specificity regarding timing and/or substance. For example, paragraph 27 states that the incident involving Attorney Kaspszyk occurred "well in advance of August 5, 2013," and it was then that Attorney Kaspszyk found Newell's behavior to be "disturbing" and his comments to be "alarming," without any detail about how Newell's behavior was disturbing or any quotes about his alarming comments. (Doc. 1, ¶27; Doc. 51-1, ¶27). Paragraph 29 describes that, after one incident at a local diner, "[o]n multiple other occasions, Mr.

Newell also threatened Defendant Kresge with physical violence."

Further, the plaintiffs impute knowledge of all of the incidents above to each of the defendants. Assuming that each of the defendants possessed this knowledge, the court is unable to conclude that Newell's attack was a "fairly direct" result of the defendants' actions. The connection between each of the defendant's actions (described in the preceding section) and the shooting is too attenuated.  The court accepts that the sale of his land served to outrage Newell.  Nonetheless, the court cannot accept the plaintiffs' conclusory statement that the defendants' actions directly led to Newell's homicidal attack on attendees at Ross Township's meeting on August 5, 2013. The attack was not foreseeable, and thus the plaintiffs have failed to adequately plead the first element of the state-created danger theory of liability.

## C.    Deliberate Indifference to Plaintiff's Safety

The second element requires the plaintiffs to sufficiently allege that the defendants acted in willful disregard for or deliberate indifference to Bauer's safety. Morse, 132 F.3d at 910. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)); see County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Kaucher, 455 F.3d at 425. "[O]nly the most egregious official conduct can be

20

said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (internal citation omitted); Kaucher, 455 F.3d at 425. In a substantive due process claim, official conduct is egregious only when it "shocks the conscience and violates the decencies of civilized conduct." Lewis, 523 U.S. at 846-47 (internal citation omitted); Kaucher, 455 F.3d at 425. There is no definitive standard for "shocks the conscience," and the determination of whether conduct shocks the conscience entails an analysis of the facts in a particular case. Kaucher, 455 F.3d at 425-26. In a case involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n.10; Kaucher, 455 F.3d at 426-27 & n.4. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Kaucher, 455 F.3d at 427 n.4.

Inherent to the concept of deliberate indifference is the awareness of a real danger. As discussed above, Newell's actions are not a fairly direct result, or "obvious consequence," of the defendants' actions. The role that each defendant played in prosecuting and enforcing an action for zoning violations cannot lead a reasonable jury to conclude that the defendants' actions shocked the conscious or amounted to deliberate indifference.

The plaintiffs argue that Ross Township's and the Ross Township

21

Supervisor's actions involved corruption that would shock the conscience, since Supervisor Kresge coveted Newell's property. (Doc. 35 at 21)[2]. The plaintiffs, however, do not allege that Supervisor Kresge purchased the property at the Sheriff's Sale. Without more, these improper motives do not shock the conscience. See Locust Valley Golf Club, Inc. v. Upper Saucon Twp., 391 F. App'x 195, 199-200 (3d Cir. 2010) (non-precedential opinion).

In Locust Valley, the Third Circuit was confronted with a Section 1983 suit filed by golf club owners against the township and the township's board of supervisors for interfering with their agreement to sell property to a developer. The appellant-owners argued that the appellees violated their substantive due process rights by voting against rezoning the property, thereby not allowing its development. Further, the owners claimed that the appellees wrongfully blocked the development because one of the supervisors previously sought to buy the property for himself, and hence engaged in self-dealing. The Third Circuit noted that the only evidence of self-dealing in the case was the supervisor's "earlier, unsuccessful attempts to purchase the golf course, supporting a reasonable inference that [the supervisor] may have acted out of spite or in the remote hope that he might one day purchase the property himself." Id. at 199. In upholding summary

---

[2]All citations to page numbers of documents on the case docket refer to the Case Management/Electronic Case Files (CM/ECF) document page number.

judgment in favor of the appellees, the Third Circuit stated, "Taking this allegation as true, we conclude that [the supervisor's] 'improper motives' were not so egregious as to shock the conscience." Id. Here, as in Locust Valley, the plaintiff alleges that a township supervisor unsuccessfully attempted to purchase the subject property more than once, and that, as a result, this supervisor spurred other supervisors to vote unfavorably on a zoning matter. Accepting this allegation as true, the court cannot conclude the Supervisor Kresge's improper motives were so egregious as to shock the conscience.

Moreover, the plaintiffs do not argue that the township's accusations of Newell's infractions were unfounded. Notwithstanding Supervisor Kresge's supposed improper motives, the Court of Common Pleas of Monroe County found the township's claims to be credible and ultimately sanctioned the defendants' actions. The court finds that the conduct of each of the defendants, as alleged by the plaintiffs, does not exhibit deliberate indifference or establish the "requisite degree of culpability" to sustain a claim for a constitutional violation. Phillips, 515 F.3d at 240. The plaintiffs have failed to satisfy the second element of the state-created danger theory of liability.

**D.    Relationship between the Defendants and Plaintiff**

The third element requires a plaintiff to adequately plead that the

plaintiff had a relationship with the state "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." Kaucher, 455 F.3d 431. In their oppositions to the respective motions to dismiss filed by Ross Township, the Ross Township Supervisors, and Solicitor Dunn, the plaintiffs argue that Bauer was a foreseeable victim, relying on Reed v. Gardner, 986 F.2d 1122, 1127 (7th Cir. 1993) and Van Orden v. Borough of Woodstown, 5 F.Supp.3d 676 (D.N.J. 2014). (Doc. 35 at 23; Doc. 47 at 30).

In Reed, several motorists and passengers died and suffered serious injuries after a drunk driver collided with their cars. The drunk driver had been a passenger in a car that was pulled over by police officers. The police officers arrested the sober driver while leaving behind the obviously drunk passenger who subsequently took the wheel. In Van Orden, a motorist drowned after officials opened floodgates to a dam in anticipation of the arrival of a hurricane without closing the affected road. In each case, the respective courts found the victims to be members of a discrete class of persons subjected to the foreseeable harm created by the defendants' actions. The ensuing accidents flowed directly from the actions of the defendants in those cases. In contrast, here the defendants' actions did not directly cause a harm transforming the August 5, 2013 township meeting

attendees into a discrete class of persons.

The plaintiffs reference Peter Newell's warning to police officers that "people" are going to die over the dispute in support. This generalized statement does not hint to specific persons or even a discrete class of persons but rather the general public. Each of Newell's other threats, as described in the complaint, were individualized threats. The plaintiffs have not succeeded in establishing the requisite relationship between the defendants and Bauer, and thus have failed to establish the third element.

In sum, neither the original complaint nor the proposed amended complaint includes factual allegations sufficient to state a due process claim because the plaintiffs have failed to satisfy all four elements of the state-created danger theory of liability. As such, Patricia Bauer's claim for personal injury cannot go forward, and Richard Bauer's derivative claim for loss of consortium also cannot move forward. The August 5, 2013 shooting was not a foreseeable result of the defendants' alleged action or inaction. It was Rockne Newell, and not the defendants, who caused Patricia Bauer's physical injuries.[3]

---

[3] In their oppositions to Solicitor Dunn's and Sheriff Martin's respective motions to dismiss, the plaintiffs argue that they should be able to pursue a wrongful death claim under §1983, which is not alleged in this matter. (Doc. 47 at 33; Doc. 32 at 29). Counsel for the plaintiffs appear to have inadvertently worked off of briefs in the related matter of Frances LaGuardia v. Ross Township, et al., 3:15-CV-1475-MEM, in which they also represent the plaintiff, who is actually pursuing a wrongful death claim. Needless to say,

## V.    CONCLUSION

For the foregoing reasons, the plaintiffs' motion to amend the complaint is denied for futility, and the defendants' motions to dismiss the complaint are granted. The plaintiffs' original complaint is dismissed with prejudice. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 29, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1523-01.wpd

---

this argument is not applicable here.